

SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| In re: | ) | |
|---|---|---|
| | ) | |
| CORY MARTIN and | ) | Case No.:   11-12133-JDW |
| AMANDA MARTIN, | ) | |
| | ) | |
| Debtors. | ) | Chapter:   13 |
| | ) | |

### ORDER GRANTING MOTION FOR AUTHORIZATION TO DISBURSE SETTLEMENT PROCEEDS (DKT. # 75)

This case came before the Court for hearing on March 21, 2017, on the Motion for Authorization to Disburse Settlement Proceeds (the "Motion")(Dkt. # 75) filed by Locke D. Barkley, the chapter 13 trustee (the "Trustee"). Creditor Sycamore Bank (the "Bank") objected to the Motion (the "Objection")(Dkt. # 79). Cory and Amanda Martin (the "Debtors") filed a reply to the Objection (the "Reply")(Dkt. # 82), opposing the Bank's position. Attorney Brad Palmertree appeared at the hearing on behalf of the Bank,

1

Jeff Collier appeared on behalf of the Trustee, and Gaines Baker appeared on behalf of the Debtors. The only issue before the Court is whether the Bank is entitled to share in a post-discharge distribution to unsecured creditors. For the reasons set forth below, and due to the unique facts and circumstances of this case, the Court concludes that the Bank is not entitled to share in that distribution.

## I.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984*. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II.   FACTS[1]

The Debtors filed a petition for relief under chapter 13 of the Bankruptcy Code[2] on May 11, 2015 (Dkt. # 1). On September 16, 2011, the Debtors' chapter 13 plan was confirmed by order of the Court (Dkt. # 25). The debt to the Bank stemmed from a promissory note made by the Debtors payable to the Bank, secured by the Debtors' mobile home and a deed of trust

---

[1] The pertinent facts of this case are undisputed.

[2] All statutory citations are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise noted.

2

on the land on which the mobile home was located. The Bank was a secured creditor at the time of the filing of the petition, filed its claim as such (Claim No. 14), and was treated as a secured creditor under the plan (Dkt. # 20). The Debtors paid the Bank through their plan, eventually bringing the Bank current as of the date of the original closing of the case. The Bank's debt was a long-term debt contemplated by § 1322(b)(5), so it was not paid in full. Although the Debtors were to bring the Bank current by the end of the plan term (which they did), the remainder of the debt would be paid as and when due under the terms of the loan documents.

The Debtors completed the confirmed plan as modified by a subsequent Court order (Dkt. # 43), received their discharge (Dkt. # 65), and the case was closed on July 16, 2016 (Dkt. # 66). Post-closing, the Debtors defaulted on their obligations to the Bank, and the Bank foreclosed on its collateral. At the foreclosure sale, the collateral was sold to a third-party bidder, and the Bank realized net proceeds of $36,419.08. Those sale proceeds were applied to the debt, leaving an unsecured deficiency balance of $24,875.65 as of February 2, 2017. The parties agree that because the Bank's claim was treated as a long-term debt under § 1322(b)(5), this unsecured deficiency balance was not discharged in the chapter 13 case.

On December 14, 2016, the Court reopened the case on the Trustee's request in order to administer an unrelated asset of the estate, settlement

proceeds received by debtor Angela Martin (Dkt. # 72).[3]  *See* 11 U.S.C. § 350(b)("A case may be reopened . . . to administer assets."). Mrs. Martin was the plaintiff in a lawsuit in which she received a settlement in the amount of $112,500. The net amount due to Mrs. Martin was $64,561.11, which is property of the Debtors' bankruptcy estate (the "Proceeds"). Prior to receiving the settlement, Mrs. Martin assigned her right to receive the Proceeds to Woodbridge Baric Pre-Settlement Investments, LLC ("Woodbridge") in exchange for advances against the Proceeds. As of January 12, 2017, the balance owed to Woodbridge was $57,405.15, but Woodbridge agreed to accept a reduced amount of $36,000 in full satisfaction of its claim, provided that it received that payment on or before February 15, 2017.

The Motion essentially requested relief in three parts. First, the Motion requested that the Trustee be authorized to disburse $235 to the Court to pay the fee for filing the motion to reopen this case. Second, the Motion requested that the Trustee be authorized to disburse $36,000 to Woodbridge to satisfy its valid lien against the Proceeds. Finally, the Trustee sought authorization to disburse the balance of the Proceeds to timely-filed general unsecured claims, which total $19,715.52, plus the Trustee's

---

[3] In conjunction with the reopening of the case, the required filing fee of $235 was deferred by Order of the Court (Dkt. # 71).

statutory compensation and expense. The Trustee proposed to disburse the remaining balance of the Proceeds to Mrs. Martin.

The Bank did not object the payment of Woodbridge's reduced claim or to payment of the deferred filing fee. Rather, the Bank argues only that it should participate pro rata in the distribution of the remaining Proceeds to unsecured creditors, as its remaining claim is no longer secured. If the Bank shares in the distribution, the unsecured creditors' distribution will be 52% percent of their claims (as opposed to 100%), and Mrs. Martin will receive nothing. The Bank agrees that if it shares in the distribution, the remainder of the unsecured claim would be deemed discharged.

Because of the time-sensitive nature of the offer to reduce Woodbridge's claim from around $57,405 to $36,000, the Trustee and the Bank agreed to the Court's entry of an order authorizing the Trustee to disburse $36,000 to Woodbridge, but reserving judgment regarding the proper disbursement of the balance of the Proceeds (Dkt. # 81). The only issue remaining before the Court is whether the Bank should participate in the distribution of the remaining Proceeds to unsecured creditors.

### III. DISCUSSION

A chapter 13 plan may provide for the curing of a default and maintenance of payments while the case is pending on any secured claim on which the last payment is due after the date on which the final payment

5

under the plan is due. 11 U.S.C. § 1322(b)(5). A debtor's personal liability on these long-term debts is not dischargeable. 11 U.S.C. § 1328(a)(1). The Bank concedes, then, that if it is allowed to participate in the distribution to unsecured creditors contemplated in the Motion, then its remaining claim will be deemed to have been discharged. The Bank expressed a preference for payment of a lesser amount through participation in the distribution over the status quo—its holding a larger, nondischargeable unsecured claim.

"The provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). The confirmed plan in this case classified the Bank as a secured creditor, and proposed to pay the Bank (and did pay the Bank) as permitted by § 1322(b)(5). As noted above, at the completion of the payments under the plan and entry of discharge, the Bank's claim against the Debtor was current under the original loan documents. The events that give rise to the Bank's objection to the Trustee's Motion occurred post-discharge.

Section 1329 provides that, on the request of a debtor, the trustee, or the holder of an allowed, unsecured claim, a plan may be modified "after confirmation of the plan but before the completion of payments under such plan." 11 U.S.C. § 1329(a). Increasing or decreasing the distribution to creditors under the terms of a confirmed plan is a modification of that plan. 11 U.S.C. §1329(a)(1). *Post-confirmation* modifications are allowed because "during the life of the plan, circumstances may change, and parties should

6

have the ability to modify the plan accordingly." *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006). There does not appear to be a similar policy consideration regarding *post-discharge* modifications to reclassify a portion of a claim from secured to unsecured. In fact, § 1329(a) provides for modification only "before the completion of payments under such plan." Further, the parties admit that there is a dearth of law on the issue presented in this case, and the Court was also unable to find any cases on point.

There is no dispute that if the Trustee had received the Proceeds during the original pendency of the case, the Bank would not have been entitled to share in the distribution to unsecured creditors. The Bank did not have an unsecured claim against the Debtors until after the case was discharged and closed. It logically follows, then, that a post-discharge change in a creditor's circumstances does not affect that creditor's entitlement (or not) to participate in the distribution of an estate's assets. The Bank was scheduled and treated as fully secured through the plan, and it received everything it was entitled to receive under the plan. The Debtors still owe any deficiency balance remaining under the terms of the original note and security agreement with the Bank. Their use of § 1322(b)(5) simply permitted the Debtors to cure their pre-petition default over the life of the plan and emerge from this bankruptcy case current on their obligation to the

Bank. Subsequent events cannot change the character of the Bank's claim within the bankruptcy case.

The unsecured creditors whose claims were discharged in the bankruptcy case are entitled to the Proceeds. Those creditors have no other avenue of recovery. The Bank's claim was not discharged, and it is now free to pursue the Debtors for collection from non-estate sources.

## IV. CONCLUSION

At all times during the pendency of this bankruptcy case, from the filing of the petition, through confirmation, completion of the plan payments, and discharge, the Bank maintained a secured claim. The Debtors' obligations to the Bank were not discharged upon entry of the discharge order in this case. 11 U.S.C. §§ 1322(b)(5), 1328(a)(1). The Bank is now free to seek collection of its unsecured claim from the Debtors. The other, discharged, unsecured creditors cannot, and the Proceeds are the only recovery those creditors will receive. 11 U.S.C. § 524(a). For the reasons set forth above, the Bank is not entitled to participate in the proposed distribution to unsecured creditors. Accordingly, is hereby

**ORDERED, ADJUDGED, and DECREED** that

1. The Bank's objection to the Trustee's Motion is **OVERRULED;**

2. The Motion is **GRANTED;**

3. The Trustee is authorized to pay to the Clerk of Court the deferred

fee of $235.00;

4. The Trustee is authorized to fully pay the general unsecured creditors with timely filed claims, and the Trustee's statutory compensation and expense; and

5. The Trustee is authorized to distribute the remaining balance to Debtor Amanda Martin.

##END OF ORDER##